## T. Harkins v. The State.

1. Petit Jury— Organization. —It is now well settled that the rulings of the court below in organizing a petit jury will not be revised, unless the record shows that they infringed the jury law or prejudiced the rights of the defendant.

2. Evidence. — In a trial for false imprisonment, the defence proposed to prove menaces made by the injured party while he was detained by the accused. *Held*, that the evidence was properly excluded because immaterial, inasmuch as the offence was already complete at the time the menaces were made.

3. False imprisonment may consist in preventing a person from going in any direction he sees proper, without detaining him in any particular spot.

Appeal from the County Court of Montague. Tried below before the Hon. B. E. Green, County Judge.

The information was based upon art. 2169 *et seq.*, Paschal's Digest, and charged the false imprisonment of one T. B. Chambliss. The trial resulted in a verdict of guilty, and a fine of $50 was assessed against defendant.

Chambliss alone testified for the State, and the substance of his evidence was, that he started to his home, in the country, from the town of Montague, on the evening of September —, 1878, and got in company with the defendant and one Joe Copeland. After riding along for a half-mile, they came to a point in the road where defendant said he saw Blue Roberts lying drunk before he was killed. Defendant, after making some remarks about Roberts, commenced talking about the treatment he had received at the hands of various parties; and, speaking bitterly, said that, during a recent term of the District Court, one Dee rubbed sand and other filth in his mouth. Witness replied, "Yes, I saw him do that;" whereupon defendant began cursing, and said he knew witness was there, but that he should not tell him of it; that he knew witness belonged to a clique of forty, and that he had witness and nineteen others marked down to kill, for the way he had been treated; that he now had his strength back, and intended to get satisfaction for the abuse which had been heaped on him when he could not help himself. Witness protested that he belonged to no clique; but defendant continued his cursing, saying that he was "heeled," and had a notion to kill witness. Witness, fearing a difficulty, left the road, with the intention of pursuing his journey away from the road, thus avoiding the defendant, whom he feared would carry out his "notion." Defendant called to witness, and said, "No, you don't come that over me; if you are going for your gun, I will cut you off." Witness then stopped in the road, believing that defendant would hurt him if he kept on, and told defendant if he thought that, to keep on, and he (witness) would ride behind him. Defendant said, "No, sir; you don't come that over me; you can take no such advantage as that;" and then told Copeland to ride on in front, and witness to ride along side by side with him (the defendant); which was done. Defendant continued to curse and abuse witness, until they got to a house where

witness saw a friend of his, and he turned suddenly and left defendant, who cried back to witness that he (defendant) would get him yet. The witness had never had a difficulty with defendant. Was present at a difficulty in which defendant was engaged, but took no hand in it.

For the defence, Joe Copeland testified, in substance, that he was riding along the road ahead of the parties, and heard them talking, but paid no attention to what was said. Did not hear defendant use any abusive language, or swear at Chambliss. When Chambliss started on ahead, witness heard defendant say to him, "If you are going after your gun, I will beat you there." Witness was not permitted to testify to what Chambliss said at the time he left defendant, and before the defendant made the remark quoted above.

No brief for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

White, J. Appellant was convicted upon information, for false imprisonment, and his penalty fixed at a fine of $50.

The practice pursued by the court in the selection of the jury, which is questioned by the first bill of exceptions, was in strict conformity with established precedents. *Speiden* v. *The State*, 3 Texas Ct. App. 156; *Burfey* v. *The State*, 3 Texas Ct. App. 519; *Jones* v. *The State*, 3 Texas Ct. App. 575. "The rule is now well settled that, no prejudice to the appellant appearing to have resulted from the rulings of the court below in organizing the petit jury, and no infringement of the jury law in force when the trial was had, being apparent, such rulings present no questions necessary for revision." *Ray* v. *The State*, 4 Texas Ct. App. 450; *Dixon* v. *The State*, 2 Texas Ct. App. 530.

The second bill of exceptions was saved to the refusal of

the court to permit the answer of witness to the following question asked by defendant, viz.: "What did Chambliss say to defendant about his (Chambliss's) shot-gun, at the time he left defendant and started ahead?" There was no error committed, and what Chambliss did or did not say, at the time mentioned, was wholly immaterial, because at that time the law was already violated by defendant, and his offence was complete. It would have been no extenuation, much less justification, of his offence, for him to prove that Chambliss was going, or said he was going, to get his gun, to commit an assault with it upon him.

The information was based upon art. 2169 *et seq.*, Paschal's Digest, and the charge of the court was a fair and full presentation of the law applicable to the facts.

"To stop a man from going in any direction he sees proper, though without detaining him in a particular spot, may constitute false imprisonment." *Woods* v. *The State*, 3 Texas Ct. App. 204. See also *Herring* v. *The State*, 3 Texas Ct. App. 108.

The evidence is sufficient to warrant the verdict and judgment, and no error being made to appear, the judgment is affirmed.

*Affirmed.*